**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:05-CR-481 |
| | : |
| v. | : (Judge Conner) |
| | : |
| **PERCY HARRIS (1),** | : |
| | : |
| **Defendant** | : |

## MEMORANDUM

Defendant Percy Harris moves, through appointed counsel, for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (See Doc. 152). Harris asks the court to reduce his sentence to time served based on his medical condition and his concern regarding potential spread of the COVID-19 virus[1] at the Metropolitan Correctional Center in New York ("MCC New York") where he is currently incarcerated. The government opposes compassionate release. For the reasons that follow, we will deny Harris's motion.

**I.    Factual Background & Procedural History**

A grand jury returned a four-count indictment (Doc. 11) against Harris and one codefendant in December 2005. Harris thereafter agreed to plead guilty to a two-count superseding information (Doc. 37) charging him with manufacturing, distributing, and possessing with intent to distribute powder and crack cocaine

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the coronavirus disease (COVID-19) and the virus that causes it,* WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

(Count 1) and seeking forfeiture of various cash, bank funds, and assets (Count 2). (See Doc. 38).

The presentence report found that Harris was responsible for significant quantities of controlled substances: specifically, 77.64 kilograms of powder cocaine and 23.68 kilograms of crack cocaine. (PSR ¶ 14). These quantities converted to a marijuana equivalent of 489,108 kilograms and produced a base offense level of 38, the highest contemplated by the controlled-substance Guidelines. (Id.); see U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (U.S. SENTENCING COMM'N 2005). After a three-level reduction for acceptance of responsibility, Harris had a total offense level of 35 and a Guidelines range of imprisonment of 210 to 240 months. (See Sent. Tr. 5:5-15). In sentencing Harris to the statutory maximum term of 240 months' imprisonment, the court emphasized the substantial quantity of drugs involved in Harris's offense as well as his serious criminal history. (See id. at 16:17-17-1).

Harris moved to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255, (Doc. 84), and we denied that motion, (see Docs. 96, 120). We also denied Harris's requests for a sentence reduction under retroactive Guidelines Amendments 706 and 782, respectively, finding that, due to the drug quantities involved in the offense, Harris's Guidelines range was unaffected by the retroactive reductions. (See Docs. 104, 149). Harris is currently housed at MCC New York, with a projected release date of January 31, 2022. See *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "13510-067") (last visited July 24, 2020).

On May 11, 2020, Harris wrote the warden at MCC New York and asked her to consider seeking compassionate release on his behalf. (Doc. 154-2 at 1). The warden apparently denied that request, but the evidence the parties submitted does not tell us when. (See id. at 3). On May 22, Harris filed a *pro se* motion for compassionate release with this court. (Doc. 152). That same day, we appointed the Federal Public Defender to determine whether Harris may be eligible for such relief and, if so, to file any appropriate motion or briefing on his behalf. (Doc. 153). Appointed counsel filed a brief in support of Harris's motion on July 6, (Doc. 154), and we promptly implemented an expedited briefing schedule, (Doc. 155). Harris's motion is now fully briefed and ripe for review. (See Docs. 154, 161, 162).

**II.   Discussion**

Harris asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239. Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under Section 3582(c)(1)(A). See id. § 3582(c)(1)(A). But before a defendant can move the court directly, he must either "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or wait for 30 days to lapse from the warden's receipt of a request that the

BOP file such a motion. Id. Harris submitted a request to the warden on May 11, 2020, (Doc. 154-2 at 1), and the warden apparently denied that request, (see Doc. 154-2 at 3). The government assumes Harris has satisfied the statutory exhaustion requirements. (Doc. 161 at 16). We therefore turn to the merits of Harris's motion.[2]

---

[2] We disagree with the government's suggestion that a prisoner satisfies the statutory exhaustion requirement by simply waiting 30 days after submitting a request to the warden to file a motion in the sentencing court. We have previously held that, if a warden responds to a request to bring a motion for compassionate release on a prisoner's behalf within the 30-day timeframe provided by 18 U.S.C. § 3582(c)(1)(A)—thus not allowing 30 days to "lapse" without action—the prisoner "must fully exhaust the warden's denial within the BOP" before we can entertain his motion. See United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (collecting cases). We have no evidentiary indication that Harris has done so. See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A) and collecting cases); Petrossi, No. 1:17-CR-192, __ F. Supp. 3d __, 2020 WL 1865758, at *3-4 (M.D. Pa. Apr. 14, 2020). Courts are divided on whether Section 3582(c)(1)(A)'s exhaustion provision is a jurisdictional requirement that cannot be waived or forfeited by the government or whether it is a mandatory claim-processing rule subject to waiver and forfeiture. Compare United States v. Alam, 960 F.3d 831, 833-34 (6th Cir. 2020) (nonjurisdictional); United States v. Johnson, No. 15-CR-125, __ F. Supp. 3d __, 2020 WL 3041923, at *3-4 (D.D.C. May 16, 2020) (same); United States v. Nazer, No. 18-CR-00783-2, __ F. Supp. 3d __, 2020 WL 2197840, at *3-4 (N.D. Ill. May 6, 2020) (same); United States v. Haney, No. 19-CR-541, __ F. Supp. 3d __, 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020) (same), with United States v. Baye, No. 3:12-CR-00115-RCJ, __ F. Supp. 3d __, 2020 WL 2857500, at *3-5 (D. Nev. June 2, 2020) (jurisdictional requirement); United States v. Johnson, No. CR RDB-14-0441, __ F. Supp. 3d __, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020) (same). Although not specifically raised by the parties, the court has a continuing obligation to consider questions of subject-matter jurisdiction *sua sponte*. See Fort Bend County v. Davis, 587 U.S. __, 139 S. Ct. 1843, 1849 (2019) (citing Gonzalez v. Thaler, 565 U.S. 134, 141 (2012)). However, we need not resolve the jurisdictional question in this case. Assuming jurisdiction *arguendo*, Harris has not established that a reduction in sentence under Section 3582(c)(1)(A)(i) is warranted. See Jordon v. Attorney Gen., 424 F.3d 320, 325 n.8 (3d Cir. 2005) (citing, *inter alia*, Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003), and holding that when a jurisdictional limitation "has a statutory provenance," rather than a constitutional one, courts may assume jurisdiction *arguendo*).

A.     **Extraordinary and Compelling Reasons**

Harris contends that the risk associated with being housed in a facility where the COVID-19 virus has been detected "has caused [him] great concern." (Doc. 154 at 1). He asserts that two of the individuals who tested positive for the virus were his cellmates, that the presence of the virus in his facility creates "a serious present danger of illness or even death," and that the best option to protect his health and safety is to be released "from the extremely hazardous environment of prison, and into a more safe and stable setting." (Id. at 1-2, 6). We do not doubt that Harris is genuinely concerned. But his concerns, without more, do not provide "extraordinary and compelling reasons" to justify immediate release from imprisonment.

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission. See 28 U.S.C. § 994(t). In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[3] See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or

---

[3] We recognize that this policy statement has not been amended since passage of the First Step Act. See United States v. Kelly, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)). We agree with those courts to observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling. Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

mental health because of the aging process" if the impairment "substantially diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover." Id. at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III). A defendant may also be eligible for an age-based reduction if he is 65 or older, is experiencing "serious deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of his term of imprisonment. Id. at cmt. n.1(B). The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above. Id. at cmt. n.1(D).

      The BOP has also developed internal criteria for addressing prisoner requests for compassionate release. Of the many considerations identified in the BOP's policy statement, the only criteria potentially applicable to Harris are those concerning prisoners with a "debilitated medical condition." See FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 5 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The statement provides that compassionate release should be considered for prisoners "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover." Id. Specifically, the BOP will consider compassionate release if a prisoner is "[c]ompletely disabled, meaning the [prisoner] cannot carry on any self-care and is totally confined to a bed or chair; or

[c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when crafting these criteria. Fortunately, the Third Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions. In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." Raia, 954 F.3d at 597.[4] Over the past few months, district courts in the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for release. See Ndir v. Doll, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); D.M. v. Barr, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); United States v. Anderson, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa.

---

[4] The Third Circuit in Raia held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile. See Raia, 954 F.3d at 596-97. Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably *dicta*. We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

Apr. 23, 2020) (same in pretrial detention context).  In other words, something more is required.

Harris asserts that his medical condition and the presence of the COVID-19 virus within MCC New York supply the requisite "something more" and establish extraordinary and compelling reasons for his immediate release.  Harris contends that he suffers from "chronic left knee pain, acute pharyngitis, and joint disorders," that he has a history of bronchitis, and that "his lungs are not strong." (Doc. 154 at 1).  There is no indication in guidance from the Centers for Disease Control and Prevention ("CDC") that chronic pain, pharyngitis, or joint disorders render someone more vulnerable to serious complications from COVID-19.[5]  See *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated July 17, 2020).  The guidance does advise that chronic bronchitis "is known to increase" one's risk, id., and Harris claims to have a history of bronchitis, (see Doc. 154 at 1). We find no support for Harris's claim in the limited medical records that have been submitted.  (See generally Doc. 157).  Nonetheless, even if we were to credit Harris's representation and assume that he qualifies as a person who is or may be at greater risk of severe complications from COVID-19, we do not believe the circumstances warrant compassionate release.

---

[5] BOP medical records reflect additional diagnoses of alcohol use disorder (severe), cannabis use disorder (moderate), hypermetropia, and presbyopia, (Doc. 157 at 1), none of which appear on the CDC's lists.

As of this writing, BOP statistics identify 13 positive prisoners and five positive staff members at MCC New York, with five prisoners and 41 staff members having recovered from COVID-19 and no deaths reported.  See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (select "Full breakdown and additional details") (last updated July 26, 2020, 3:00 p.m.). These figures rank MCC New York at 31st out of approximately 127 facilities with active infections among the prisoner population.  See id.  This reality, while not insignificant, does not mirror dire situations like those that previously occurred at FCI Oakdale I, which experienced inordinately high infection and death rates in comparison to other facilities, justifying compassionate release.  See Kelly, 2020 WL 2104241, at *7 & nn.16-17 (citations omitted).

Harris's counsel correctly notes that the pandemic response at MCC New York is the subject of an ongoing federal lawsuit and that the court in that case ordered an inspection of the facility as part of preliminary injunction proceedings. (Doc. 154 at 2 (citing Fernandez-Rodriguez v. Licon-Vitale, No. 20 Civ. 3315, 2020 WL 2225910 (S.D.N.Y. May 7, 2020))).  Following that inspection and a preliminary injunction hearing, the court denied injunctive relief.  Although it was critical of the facility's initial pandemic response, describing it as "ineffective," the court found that the warden had developed a plan to remedy those deficiencies going forward and thus had not exhibited deliberate indifference to prisoner health and safety. See Fernandez-Rodriguez v. Licon-Vitale, No. 20 Civ. 3315, 2020 WL 3618941, at *23-24 (S.D.N.Y. July 2, 2020).  MCC New York appears to be complying with its assurances to the court in that case: there are currently just 13 positive cases among

a prisoner population of nearly 700, see *Population Statistics*, FED. BUREAU OF PRISONS, https://www.bop.gov/mobile/about/population_statistics.jsp (last visited July 27, 2020), and staff have now tested almost half of the population for the virus, see *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (select "Full breakdown and additional details") (last updated July 26, 2020, 3:00 p.m.).

Moreover, the BOP has implemented extensive efforts across the board to prevent future outbreaks. It has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services. See *BOP Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 24, 2020). Prisoner movement between facilities has been "suspended with limited exceptions." Id. Movement within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones. Id. The BOP has also reduced its overall prison population by ramping up exercise of its authority under 18 U.S.C. § 3624(c)(2)—recently expanded by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)—to release certain vulnerable prisoners to home confinement. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/. The BOP reports that it has increased the use of home confinement significantly, releasing an additional 7,108 prisoners in the past four months. Id. (last updated July 26, 2020, 3:00 p.m.). We

therefore have no objective basis to find that Harris is at imminent risk of being exposed to or contracting the COVID-19 virus.

We also have no reason to believe that the BOP is unequipped to treat or has been inadequately treating Harris's medical conditions. Harris's counsel has supplied just five pages of medical records from Harris's nearly 14-year tenure in the federal prison system. Those records reveal nothing more than a generic list of Harris's current diagnoses (all of which were taken into account *supra*), his recent (now expired) prescriptions, and his upcoming appointment for a tuberculosis test next month. (See generally Doc. 157). And to the extent that Harris does have a history of bronchitis, that diagnosis is not documented in the submitted medical records, and there is no indication that he has complained of respiratory or other symptoms that might be affiliated with that condition.

The only information available to the court suggests that Harris's medical needs are minimal, that there is not a strong likelihood that he will be exposed to the COVID-19 virus at MCC New York, and that both the BOP and MCC New York staff are working to prevent such exposure from happening. On these facts, we cannot conclude that the mere presence of the COVID-19 virus at MCC New York—whether on its own or in combination with Harris's medical condition—is an "extraordinary and compelling" reason for release.

### B.     Section 3553(a) Factors

Even if we were to agree that extraordinary and compelling circumstances exist, our analysis must still be informed by the Section 3553(a) factors.[6] See 18 U.S.C. § 3582(c)(1)(A). Accounting for good time, Harris still has more than 18 months remaining on his sentence. His criminal conduct was serious, enduring, and involved staggering quantities of both powder and crack cocaine. We certainly commend Harris's rehabilitative efforts while incarcerated, and we are hopeful that they will serve him well when he is released in January 2022. (See Doc. 154-4 at 1-2). But, on balance, and for the many reasons set forth at sentencing, we find that the Section 3553(a) factors support leaving Harris's existing sentence intact.

---

[6] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution. 18 U.S.C. § 3553(a).

### III.    Conclusion

The court will deny Harris's motion (Doc. 152) for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  Our denial will be without prejudice to Harris's ability to refile the motion if, for example, he experiences a serious deterioration of his physical health.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    July 27, 2020